Brian R. Strange (SBN 103252)
lacounsel@earthlink.net
Gretchen Carpenter (SBN 180525)
gcarpenter@strangeandcarpenter.com
John P. Kristensen (SBN 224132)
jkristensen@strangeandcarpenter.com
STRANGE & CARPENTER
12100 Wilshire Boulevard, Suite 1900
Los Angeles, California 90025
Telephone: (310) 207-5055
Fax: (310) 826-3210

Michael Louis Kelly (SBN 82063)
mlk@kirtlandpackard.com
Behram V. Parekh (SBN 180361)
bvp@kirtlandpackard.com
Heather M. Peterson (SBN 261303)
hmp@kirtlandpackard.com
KIRTLAND & PACKARD LLP
2361 Rosecrans Avenue, Fourth Floor
El Segundo, California  90245
Telephone: (310) 536-1000
Facsimile: (310) 536-1001

*Counsel for Plaintiff and all others similarly situated*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA RAMIREZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FREESCORE, LLC; VERTRUE, INC.; VERTRUE, LLC; ADAPTIVE MARKETING LLC; IDAPTIVE MARKETING LLC; VELO HOLDINGS INC.; and DOES 1-50, inclusive,<br><br>Defendants. | **Case No. CV11-00720-JST (MLGx)**<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL, STAY PROCEEDINGS, AND STRIKE CLASS ACTION**<br><br>[Filed Concurrently with Declarations of Diana Ramirez and John P. Kristensen]<br><br>Date:      August 8, 2011<br>Time:      10:00 a.m.<br>Courtroom: 10A<br>Judge:     Hon. Josephine Staton Tucker<br><br>Case Filed: April 6, 2011 |

# **TABLE OF CONTENTS**

Table of Authorities . . . . . . . . iii

I. PRELIMINARY STATEMENT . . . . . 1

II. FACTUAL BACKGROUND . . . . . . 3

    A. The Government Mandated Free Credit Reports . . 3

    B. FreeScore Advertising and Website are Designed to Cause People to Believe the Services are "Free" . . . 4

    C. Plaintiff Believed She was Obtaining Her "Free" Credit Score and Provided Her Credit Card Information to Verify her Identity, not to Enter an Agreement to Arbitrate . 5

III. LEGAL STANDARDS . . . . . . . 7

IV. THE LAW MANDATES THE COURT DETERMINE WHETHER OR NOT THE PARTIES AGREED TO ARBITRATE . . . . . . . . . 7

    A. Defendants Fraudulently Induced the Contract by Deceiving Plaintiff Into Believing Checking Her Credit Scores Was Free . . . . . . . 8

    B. The Arbitration Agreement was Fraudulently Induced . 9

V. AT THE VERY LEAST, THE COURT SHOULD DEFER RULING UNTIL PLAINTIFF COMPLETES HER LIMITED ARBITRATION DISCOVERY . . . . . . 13

    A. The Law Permits Limited Discovery Prior to Determining Whether the Parties Agreed to Arbitrate . . . 13

    B. Plaintiff Seeks Discovery Related to the Fraudulent Formation of the Agreement to Arbitrate and Whether the Agreement Itself is Unconscionable . . . 15

VI. CONCLUSION . . . . . . . . 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alzaidi v. U-Haul Co. of Kan., Inc.*,
2009 WL 3045462 (D. Kan. 2009) .................................. 14

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011) ...................................... 7, 9, 15-16

*AT&T Techs. v. Communications Workers of America*,
475 U.S. 643 (1986) .............................................. 7

*Blair v. Scott Specialty Gases*,
283 F.3d 595 (3d Cir. 2002) ................................... 7, 14-15

*Coneff v. AT&T Corp.*,
2007 WL 738612 (W.D. Wash. 2007) ............................... 14

*Dun Shipping Ltd. v. Amerada Hess Shipping Corp.*,
234 F. Supp. 2d 291 (S.D.N.Y. 2002) ............................. 14

*Feldman v. Google, Inc.*,
513 F. Supp. 2d 229 (E.D. Pa. 2007) ............................. 11

*First Options of Chicago, Inc. V. Kaplan*,
514 U.S. 938 1920 (1995) ........................................ 1

*Granite Rock Co. v. International Brotherhood of Teamsters*,
130 S. Ct. 2847 (2010) ....................................... 1, 2, 9

*Green Tree Finance Corp. v. Randolph*,
531 U.S. 79 (2000) ............................................. 14

*Guadagno v. E*Trade Bank*,
592 F. Supp. 2d 1263 (C.D. Cal. 2008)) ......................... 11

*Lansmont Corp. v. SPX Corp.*,
2011 WL 2463281 (N.D. Cal. 2011) ................................ 7

*Lifescan, Inc. v. Premier Diabetic Services, Inc.*,
363 F.3d 1010 (9th Cir. 2004) ................................... 7

*Livingston v. Associates Finance, Inc.*,
2001 WL 709465 (N.D. Ill. 2011) .............................. 14-15

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ...............................................15

*R&F, LLC v. Brooke Corp.*,
2007 WL 2809845 (D. Kan. 2007) ................................. 14

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004) .................................. 10-11

*Rent-A-Center West, Inc. v. Jackson*,
130 S. Ct. 2772 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8-9

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Wilson v. Yellow Transport, Inc.*,
2007 WL 445197 (D. Kan. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**STATE CASES**

*Donovan v. RRL Corp.*,
26 Cal. 4th 261 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ford v. Shearson Lehman American Express, Inc.*,
180 Cal. App. 3d 1011 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hoffman v. Supplement Togo Management, LLC*,
2011 WL 1885675 (N.J. Super. Ct. App. Div. 2011) . . . . . . . . . . . . . . . . . . 11

*Rosenthal v. Great Western Fin. Securities Corp.*,
14 Cal. 4th 394 (1996) ("*Rosenthal*") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**DOCKETED CASES**

*In re Checking Account Overdraft Litigation*,
MDL No. 2036 (S.D. Fla. June 3, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Toll v. Experian Info. Solutions, Inc.*,
Civil Action No. 10-3164 (FSH) (D.N.J. May 18, 2011) . . . . . . . . . . . . . . . 14

**FEDERAL STATUTES**

9 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

9 U.S.C. § 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## I. PRELIMINARY STATEMENT

Defendants FreeScore, LLC, Vertrue, Inc., Vertrue, LLC, Adaptive Marketing, LLC, Idaptive Marketing, LLC, and Velo Holdings Inc.'s (collectively, "Defendants" or "FreeScore") Motion to Compel Arbitration is a misguided attempt to overturn longstanding, and recently re-affirmed, Supreme Court authority. In 2010, the Supreme Court reaffirmed its precedents holding that courts, not arbitrators, must decide whether an agreement to arbitrate is enforceable when a party contests the formation of the agreement. *Granite Rock Co. v. Intl. Bhd. of Teamsters*, 130 S. Ct. 2847, 2857-58 (2010), citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

FreeScore's reliance on *Rent-A-Center West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010) ("*Rent-A-Center*") is misplaced. *Rent-A-Center* held that when the agreement to arbitrate a contract was not in dispute, and the contract provided the arbitrator with the exclusive authority to determine whether the contract was arbitrable based on unconscionability, then the parties' prior agreement should be honored. *Rent-A-Center* did not change the law that a court, not an arbitrator, determines whether the parties actually agreed to arbitrate.

As is explained below, Plaintiff never agreed to arbitrate. Instead, she believed she was providing her credit card information to verify her identity, so that she could receive the private pecuniary information of her credit scores. As more fully discussed in Plaintiff's concurrently-filed opposition to Defendants' motion to dismiss, Defendants' advertising and website layout were intended to create the impression that individuals could obtain their "free" credit scores, and they needed the credit card information to verify the consumers' identity, not to reach an agreement to arbitrate any dispute.

Defendants seek to enforce an arbitration clause against Plaintiff that Plaintiff never intended to enter and for which the existence is solely a result of FreeScore's fraudulent inducement. Moreover, while Plaintiff's allegations and declaration justify

1 denial of this motion outright, at the very least, there are numerous factual disputes
2 concerning the enforceability of Defendants' arbitration clause against Plaintiff, and
3 Plaintiff has served limited arbitration-related discovery for purposes of more fully
4 opposing this motion if necessary.  Thus, as will be discussed more fully below,
5 Plaintiff respectfully requests that, at the very least, the Court defer ruling on this
6 Motion to Compel Arbitration in order to allow Plaintiff an opportunity to complete
7 her limited arbitration-related discovery aimed at whether or not the contract was
8 fraudulently induced or is otherwise unenforceable, and submit further briefing.
9 Defendants are asking the Court to rule on the enforceability of their arbitration
10 provision without the benefit of a fully developed factual record.  Given the
11 fact-intensive nature of this inquiry, arbitration should not be compelled in the absence
12 of appropriate discovery.  *See Granite Rock Co.*, 130 S. Ct. at 2856 ("[A] court may
13 order arbitration of a particular dispute only where the court is satisfied that the parties
14 agreed to arbitrate *that dispute*.  To satisfy itself that such agreement exists, the court
15 must resolve any issue that calls into question the formation or applicability of the
16 specific arbitration clause that a party seeks to have the court enforce.").

17 In this case, there is little evidentiary record with respect to arbitration (with the
18 exception of Ms. Ramirez's declaration, which justifies denial of this motion in and of
19 itself).  As a result, there is no appropriate substantive record upon which the Court can
20 compel arbitration.  In fact, Plaintiff served limited arbitration-related discovery on
21 FreeScore on June 3, 2011, via overnight mail. (*See Declaration of John P. Kristensen*
22 (hereinafter "*Kristensen Decl.*"), ¶ 3, *Exhibits* "2" and "3" Pl.'s First Set Reqs. Produc.
23 to Defs.; Pl.'s First Set Interrogs. to Defs.).  FreeScore served its untimely responses
24 on Friday, July 8, 2011.  The responses are replete with boilerplate objections and no
25 substantive answers to Plaintiff's simple requests. (*See Kristensen Decl.*, ¶ 4, *Exhibits*
26 "4" and "5").  However, it appears that FreeScore waived its objections by untimely
27 serving its responses.  *See* FRCP Rules 33(b)(4) and 34; *Davis v. Fendler*, 650 F.2d
28 1154, 1160 (9th Cir. 1981); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d

1468, 1473 (9th Cir. 1992). Defendants' further responses, without objection, to these discovery requests, together with a limited Rule 30(b)(6) deposition, will confirm certain important issues for the Court's consideration. For example, Plaintiff's arbitration discovery requests that Defendants identify all steps taken to inform consumers of the arbitration clause on the website, to produce documents concerning the readability/highlighting of the arbitration agreement, to produce all documents referencing or reflecting the number of arbitrations that have taken place between Defendants and their customers, as well as to identify customer complaints. Defendants' responses are directly relevant to factors to be considered by the Court in determining whether an enforceable arbitration agreement exists.

Thus, while Plaintiff respectfully urges the Court to deny the Motion to Compel Arbitration on the grounds that the agreement to arbitrate was fraudulently induced, at the very least, Plaintiff requests that the Court defer ruling on the Arbitration Motion, order Defendants to timely and fully respond to Plaintiff's arbitration discovery without objection within 14 days of the Court's ruling, permit Plaintiff to conduct an arbitration-related deposition pursuant to Rule 30(b)(6), allow Plaintiff to file a further brief in opposition to the Motion to Compel Arbitration, and schedule oral argument on the Motion at the Court's convenience.

## II.   FACTUAL BACKGROUND

### A.   The Government Mandated Free Credit Reports

In 2003, Congress passed the Fair and Accurate Credit Transaction Act ("FACT Act"), an amendment to the Fair Credit Reporting Act. This law gave American consumers the right to access their credit reports annually free of charge. The three nationwide consumer credit reporting companies – Equifax, Experian, and Transunion – set up AnnualCreditReport.com to provide consumers access to these reports online. The AnnualCreditReport.com website informs consumers that it is the "only service authorized by Equifax, Experian and TransUnion for this purpose," and warns that "[c]onsumers should never provide their personal information to any other company

or person for requesting free annual credit reports under the FACT Act." (*See* First Am. Compl. ("FAC"), Ex. 1, Dkt. No. 17).

In the wake of this legislation and new website, unscrupulous private credit monitoring companies created websites to dupe consumers into believing they offer the same free credit reports available through AnnualCreditReport.com. To lure consumers, they deceptively market their services as free when they are actually paid services with automatically charged monthly fees. This is nothing more than a deceptive ruse designed to trick consumers.

FreeScore is one such fee-based credit monitoring company. Defendants, through their website FreeScore.com, lure consumers with promises of "3 FREE Credit Scores." The word "FREE" is featured predominantly in outsized font throughout Defendants' website. (*See* Arbitration Motion, Ferguson Decl., Exs. B, C1, C2, Dkt. No. 23-2). However, there is nothing free about FreeScore's service. To receive the "free" credit scores advertised, consumers must provide their personal financial information. Consumers reasonably believe they are only doing so to verify their identities in this day and age of "identity theft" and heightened privacy protections. However, instead of using consumers' credit card and personal information to verify their identities, FreeScore enrolls unwitting consumers in a membership that automatically charges or debits $19.95 each month, or $239.40 annually, unless the consumer contacts FreeScore to go through an onerous opt-out procedure.

**B.**     **FreeScore's Advertising and Website are Designed to Cause People to Believe the Services are "Free"**

FreeScore is not related to the authorized website AnnualCreditReport.com, where free credit reports are actually available, nor is it a non-profit agency. FreeScore is a for-profit business owned by Vertrue, set up for the purpose of generating revenue on the backs of consumers seeking out their free credit reports and corresponding credit scores. FreeScore has run an extensive radio and television campaign, featuring television personality Ben Stein, to lure consumers. The false claim that FreeScore

offers a free service to consumers is so central to Defendants' deceitful business model that the name of the company and the website include the word "free." The website is not called monthlycreditscores.com or creditmonitor.com. It is called FreeScore.com, with the intent of deceiving customers into believing they are getting their government mandated free credit reports.

When consumers first arrive on the FreeScore.com homepage, they are bombarded with large bold lettering, which reads "Check Not One But 3 FREE Credit Scores." (*See* Arbitration Motion, Ferguson Decl., Ex. B, indicating the page previously read "Get 3 Free Credit Scores!"). FreeScore.com boldly states that "Viewing your Credit Scores is as easy as 1-2-3!" The three simple steps are explained as 1) "CLICK. Click on 'See Your Scores Now!'"; 2) "COMPLETE. Fill out the simple form."; and 3) "VIEW. See your 3 FREE Credit Scores instantly!" Unwitting consumers have no reason to believe that the process will be more difficult than Defendants' website promises or that it will cost them anything, especially when the word "FREE" is emblazoned throughout the website and is in the name FreeScore itself.

Furthermore, most of the disclaimer information is submerged on the website, where users rarely, if ever, scroll down.

### C. **Plaintiff Believed She was Obtaining Her "Free" Credit Score and Provided Her Credit Card Information to Verify Her Identity, not to Enter an Agreement to Arbitrate**

Plaintiff visited FreeScore.com on or about November 23, 2010, seeking the free credit reporting scores she had previously seen advertised. Plaintiff reasonably believed when she visited the website that it was related to the free credit reports mandated by the government. (*See Declaration of Diana Ramirez* (hereinafter "*Ramirez Decl.*"), ¶ 2). Like most people, Plaintiff understands her credit scores are the grades the three credit monitoring systems set which reflect the points in a credit report. Plaintiff was planing on purchasing a house in the near future, and wanted to

know her credit scores and learn of any potential marks affecting the scores. Her goal was to clean up and raise her credit score prior to applying for a home loan. (*See Ramirez Decl.*, ¶ 3).

Plaintiff believed she was going to receive her scores and the underlying reports from FreeScore. At no time did Plaintiff intend to purchase a monthly monitoring service of her credit history. (*See Ramirez Decl.*, ¶ 4).

Upon visiting the website, Plaintiff viewed the word "free" in several different places on the website's homepage, including in the website address itself, "FreeScore.com." Plaintiff read, reviewed, relied upon, and believed the false claims regarding the "free" nature of her credit scores made available on Defendants' website. Reasonably believing that she would be obtaining free access to her credit scores, as the marketing promised, Plaintiff provided the required information. Plaintiff did not scroll down on the FreeScore website. The site's design reasonably caused her to believe there was nothing below the section that states "Your FREE Trial includes Credit Scores and Monitoring from all 3 Credit Bureaus!" above the logos of TransUnion, Experian and Equifax. (*See Ramirez Decl.*, ¶ 5).

Plaintiff was unaware that she was not merely providing her information to receive the free credit scores the FACT Act entitles her to. She did not know that providing her information actually enrolled her in a fee-based "credit monitoring" service and would begin charging her credit card monthly fees for the service. Plaintiff provided her credit card information under the belief that it was required to prove that she was in fact Diana Ramirez, and it was for security purposes, not with an intent or to agree to arbitrate any dispute. (*See Ramirez Decl.*, ¶¶ 6-7).

Plaintiff did not realize she had signed up for a monthly monitoring system until she received a monthly charge of $19.95 to her credit card, the first of which was only a few days after providing her information to Defendants. Plaintiff soon realized that she had not merely signed up to receive her free credit scores, but rather, Defendants had begun charging her a monthly fee. (*See Ramirez Decl.*, ¶ 8). On more than one

occasion, Plaintiff attempted to contact Defendants in an attempt to stop their unauthorized monthly charges, but on each instance Plaintiff was placed on terminal hold and was unable to speak with a representative of Defendants. (*See Ramirez Decl.*, ¶ 9).

## III. LEGAL STANDARDS

In reviewing a motion to compel arbitration, the district court determines whether a valid arbitration agreement exists and whether it encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004); *Lansmont Corp. v. SPX Corp.*, 2011 WL 2463281 (N.D. Cal. 2011). Fraud, duress and unconscionability "may be applied to invalidate arbitration agreements without contravening §2" of the FAA. *See AT&T Mobility, LLC v. Concepcion*, 131 S.Ct. 1740, 1755, n. * (2011) (Thomas, J., concurring); *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). If the arbitration clause itself is void due to a defect in the formation of the agreement, there is no enforceable agreement to arbitrate. *See AT&T Techs. v. Communications Workers of America*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (internal quotation marks omitted). Moreover, courts routinely permit plaintiffs to conduct discovery on arbitration-related matters in order to establish an arbitration agreement's unenforceability. *See, e.g.*, *Blair v. Scott Specialty Gases*, 283 F.3d 595, 610 (3d Cir. 2002).

## IV. THE LAW MANDATES THE COURT DETERMINE WHETHER OR NOT THE PARTIES AGREED TO ARBITRATE

Defendants seek in their motion to have the issue of arbitrability decided by an arbitrator, and not this Court. This entire argument is based on the assumption that an enforceable contract exists between Plaintiff and Defendants. However, the alleged agreement between Plaintiff and Defendants is not valid, as discussed below.

Defendants in their Arbitration Motion repeatedly point to an agreement that was

referred to in Plaintiff's First Amended Complaint. (Arbitration Motion, at 1, referring to First Am. Compl. ("FAC") ¶¶ 16, 30, Dkt. No. 17.). However, the agreement Defendants refer to, the "Terms of Membership and Membership Agreement," are not those that Plaintiff was referring to in the FAC. Plaintiff pointed to the "Terms of Site Use," which govern the use of Defendants' website, not the membership agreement. Plaintiff was referring to these Terms of Site Use as the terms Defendants seek to impose on those who visit the website, and agree to merely by such use. Plaintiff referred to these terms in the FAC to point out that the Defendants agreed to be bound by Connecticut law, not that Plaintiff had accepted the Terms of Membership and Membership Agreement or the "Terms of Site Use."

In their Motion, Defendants also reference Plaintiff's use of the terms "joined" and "joining" of FreeScore in the FAC. [Motion, at 11, referring to FAC ¶ 31; *see also* FAC ¶ 31.] However, Plaintiff placed these words in quotation marks to imply that her understanding of what she was "joining" was not the same as what Defendants claim she has "joined." As more fully discussed herein, Plaintiff reasonably believed she was obtaining access to her free credit scores, and she provided her credit card information and clicked to assent to verify her identity, not to agree to arbitrate a monthly charge.

### A. **Defendants Fraudulently Induced the Contract by Deceiving Plaintiff into Believing Checking Her Credit Scores Was Free**

Defendants argue that, based upon the language of the arbitration clause, the arbitrator has exclusive authority to determine, in the first instance, whether or not this case is arbitrable. Defendants base this argument predominantly on *Rent-A-Center*, 130 S. Ct. 2772, where the Court held that Rent-A-Center's arbitration clause granted the arbitrator exclusive authority to rule on arbitrability where the plaintiff (Jackson) challenged only the validity of the agreement as a whole based on whether the whole contract was unconscionable and not the formation of the agreement to arbitrate. *See id.* at 2780-81. However, because Plaintiff specifically challenges the enforceability of any purported delegation clause (in addition to challenging the arbitration agreement

-8-
Plaintiff's Opposition to Defendants' Motion to Compel Arbitration

as a whole), *Rent-A-Center* is not dispositive on this question.

Moreover, mere days after deciding *Rent-A-Center*, the Supreme Court handed down *Granite Rock*, 130 S. Ct. 2847. *Granite Rock* reaffirms that the court still holds the power to determine arbitrability where the formation of the parties' arbitration agreement is at issue:

> Arbitration is strictly a matter of consent, and thus is a way to resolve those disputes – *but only those disputes* – that the parties have agreed to submit to arbitration. Applying this principle, our precedents hold that courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, the court must resolve the disagreement.

*Id.* at 2857-58 (citations, footnotes, and internal quotation marks omitted). As discussed further below, Plaintiff is challenging the formation of a contract in the first instance, and therefore, it is *Granite Rock*, and not *Rent-A-Center*, which the Court should apply. Applying *Granite Rock* leaves the decision with the Court, not an arbitrator.

It is also significant that, in *Concepcion*, Justice Thomas "reluctantly" joined the five vote majority, and wrote separately to explain how he interpreted Section 2 of the Federal Arbitration Act ("FAA") and the savings clause. *See Concepcion*, 131 S. Ct. at 1753-54 (Thomas, J., concurring). As Justice Thomas explained, he would read the FAA to require "that an agreement to arbitrate be enforced *unless a party successfully challenges the formation of the arbitration agreement, such as by proving fraud or duress*." *Id.* (citing 9 U.S.C. §§ 2, 4) (emphasis added).

### B. The Arbitration Agreement was Fraudulently Induced

Plaintiff never agreed to arbitrate her dispute with FreeScore. The alleged

-9-

Plaintiff's Opposition to Defendants' Motion to Compel Arbitration

arbitration agreement is void because Plaintiff did not assent to the agreement. California law distinguishes between fraud in the "execution" or "inception" of a contract and fraud in the "inducement" of a contract. In brief, in the former case, "'the fraud goes to the inception or execution of the agreement, so that the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and [the contract] is void. In such a case it may be disregarded without the necessity of rescission.'" *Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal. 4th 394, 415 (1996) ("*Rosenthal*"), quoting *Ford v. Shearson Lehman American Express, Inc.*, 180 Cal. App. 3d 1011, 1028 (1986).

California law requires that the plaintiff, in failing to acquaint himself or herself with the contents of a written agreement before signing it, not have acted in an objectively unreasonable manner. *Rosenthal*, 14 Cal. 4th at 423. As explained below, Plaintiff did not act in an objectively unreasonable manner when she sought her "Free" credit score and provided her credit card to verify her identity.

The arbitration clause in the contract was hidden within Defendants' website and was not reasonably conspicuous to Plaintiff or other users. Plaintiff never assented to the terms of the agreement and never agreed to be bound by Defendants' arbitration clause.

"An essential element of any contract is the consent of the parties, or mutual assent. Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror." *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 270-71 (2001) (citations omitted). The late Judge Fred I. Parker noted that "[i]n recent years, the proliferation of mass market standardized contracts ... has forced courts to pay particular attention to the issue of assent." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 428 (2d Cir. 2004) (Parker, J., draft opinion).[1] In this case, Plaintiff

---

[1] Judge Parker's opinion was drafted before the final decision was made in *Register.com*, and it did not command the majority of the court. *See Register.com*, 356

-10-

Plaintiff's Opposition to Defendants' Motion to Compel Arbitration

did not give her assent to this misleading "clickwrap" offer containing unexpected and inconspicuous terms, including the arbitration clause. Since Plaintiff did not give her assent to the terms of the offer, there can be no valid arbitration clause.

The issue of "clickwrap" contracts has been addressed in a number of cases in recent years. *See, e.g., Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229 (E.D. Pa. 2007). In *Specht*, Judge (now Justice) Sotomayor held that the arbitration clause at issue was unenforceable because the plaintiffs had not been provided with "reasonable notice" of its existence, and therefore, the arbitration clause lacked plaintiffs' knowing assent. *Id.* at 28-32. The *Specht* Court found particular significance in the fact that the arbitration clause was on a "submerged" portion of the web page, meaning it was hidden from view unless the consumer scrolled further down. *Id.* at 31-32. The court used a reasonableness test, and held that the fact that the "plaintiffs may have been aware that an unexplored portion of the Netscape webpage remained below the download button does not mean that they reasonably should have concluded that this portion contained a notice of license terms." *Id.* at 32. *See also Hoffman v. Supplement Togo Mgmt., LLC*, 2011 WL 1885675, at *9 (N.J. Super. Ct. App. Div. 2011) (applying the "reasonable notice" standard to find a forum selection clause unenforceable based on the structure of the defendant's website, the court pointed to the "circuitous mode of presentation" and that the website was "designed in a manner that makes it unlikely that consumers would ever see it at all on their computer screen.").

It is true that a party may be bound by a "clickwrap" agreement if the terms are clear and acceptance is unambiguous, regardless of whether the party actually reads them. *See, e.g., Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008). However, if the terms are not "reasonably conspicuous," such that a reasonably

---

F.3d at 395, n.1 (majority opinion). Judge Parker passed away before the final decisions were completed, and the Second Circuit opted to publish his draft opinion in lieu of a dissent. *Id.*

-11-
Plaintiff's Opposition to Defendants' Motion to Compel Arbitration

prudent offeree would notice them, a party will not be bound by those terms despite clicking on a "Yes [I agree]" icon. *Specht*, 306 F.3d at 31–35 (holding that under California law, the plaintiff did not accept any software-download contract terms despite clicking on a "Yes" icon because the terms were only visible on a separate screen below the "Yes" icon, and a reasonably prudent offeree would not have scrolled down and noticed the terms before clicking "Yes.")

In this matter, the majority of the disclaimers are also in the submerged part of the webpage. The information that FreeScore is not the annualcreditreport.com website was intentionally hidden from Plaintiff because it was submerged. Information that Plaintiff was signing up for a monthly charged "credit monitoring service" was also hidden and distracted from Plaintiff. Similarly, on the FreeScore website, Defendants presented the terms of the offer in a deceiving manner which was designed to conceal and de-emphasize the provisions of the offer. As can be seen from the screen shots of Defendants' web pages, the pages are emblazoned with large font stating, "Get 3 FREE Credit Scores!" at the top. (Arbitration Motion, Ferguson Decl., Exs. C1, C2, Dkt. No. 23-2). Defendants point to the other language in much smaller font to the sides and bottom of the web pages. FreeScore also boasts of the disclaiming fine print that was submerged and not visible on the first page. However, viewing these web pages as a reasonable consumer, it cannot be said that Plaintiff was put on reasonable notice of the terms of the offer. All of the emphasis on these web pages, on the other web pages seen when visiting the site even today, and even in the name of the company itself, is on the word "Free." Defendants' bait-and-switch tactics cannot be saved by the de-emphasized small print thrown in on the sides and bottoms of the pages, which was not sufficient to give Plaintiff "reasonable notice" of the arbitration clause.

Plaintiff believed she was obtaining "free" credit scores because she believed the site was affiliated with the government mandated free credit report page. (*See Ramirez Decl.*, ¶ 5). The website was designed so Plaintiff would not see the

submerged disclaimers. Plaintiff was under the reasonable impression that her credit card was needed to verify her identity. FreeScore's disclaimer on the third page continues that ruse. It states, "**Why do you need my card?** Your valid card number helps us verify your identity and ensure that you're qualified for a free trial. It also guarantees uninterrupted service, if you choose to remain a member."

This inadequate disclosure, along with the tab prominently stating "VERIFY" in all capital letters, led Plaintiff to believe she was NOT inputting her credit card for the purpose of being charged, but rather for verification purposes. (*See* Ferguson Decl., Ex. C2). (*See Ramirez Decl.*, ¶ 6).

It was this click by which Defendants allege Plaintiff assented to arbitrate any dispute. In short, FreeScore told Plaintiff she could receive her "Free" credit score as easy as 1, 2, 3 and all that was needed was her credit card information to verify her identity for privacy purposes. At the same time, FreeScore intentionally hid almost all disclaimers under the submerged part of the website, and any additional information was in much smaller font that contradicted everything else FreeScore informed Plaintiff. Plaintiff reasonably believed she was verifying her identity when she provided her credit card information. Plaintiff did not believe she was agreeing to arbitrate the matter, or enter into a monthly monitoring service.

Plaintiff never assented to the arbitration agreement, and this motion should be denied outright on this basis alone.

## V. AT THE VERY LEAST, THE COURT SHOULD DEFER RULING UNTIL PLAINTIFF COMPLETES HER LIMITED ARBITRATION DISCOVERY

### A. The Law Permits Limited Discovery Prior to Determining Whether the Parties Agreed to Arbitrate

Plaintiff requests that, if this Court does not deny this motion outright, at the very least, the Court defer ruling and allow Plaintiff to complete her limited arbitration-related discovery and submit further briefing prior to ruling.

Courts frequently permit plaintiffs the opportunity to conduct discovery related to arbitration questions. *See In re Checking Account Overdraft Litig.*, MDL No. 2036 (S.D. Fla. June 3, 2011) (Order Deferring Ruling on Motions to Compel Arbitration, Granting Time to Conduct Limited Arbitration-Related Discovery) (unpublished) (attached to *Kristensen Decl.* as Exhibit "6"); *Toll v. Experian Info. Solutions, Inc.*, Civil Action No. 10-3164 (FSH) (D.N.J. May 18, 2011) (order granting arbitration-related discovery) (attached to *Kristensen Decl.* as Exhibit "7"). *See also Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000); *Blair*, 283 F.3d at 608-09; *Dun Shipping Ltd. v. Amerada Hess Shipping Corp.*, 234 F. Supp. 2d 291, 294-96 (S.D.N.Y. 2002); *Alzaidi v. U-Haul Co. of Kan., Inc.*, 2009 WL 3045462, at *1 (D. Kan. 2009); *R&F, LLC v. Brooke Corp.*, 2007 WL 2809845, at *2-3 (D. Kan. 2007); *Coneff v. AT&T Corp.*, 2007 WL 738612, at *1-3 (W.D. Wash. 2007); *Wilson v. Yellow Transp., Inc.*, 2007 WL 445197, at *1 (D. Kan. 2007); *Livingston v. Associates Fin., Inc.*, 2001 WL 709465, at *2 (N.D. Ill. 2001).

As the Third Circuit noted in *Blair*, "[a]lthough discovery is ordinarily not undertaken at such an early stage of a proceeding that is governed by an arbitration agreement, there is language in the Supreme Court's opinion [in *Green Tree*] faulting the claimant for not presenting evidence 'during discovery.'" 283 F.3d at 609. In both *Blair* and *Green Tree*, the plaintiff challenged the validity of the arbitration agreement on the grounds that it was cost prohibitive. *Blair*, 283 F.3d at 609; *Green Tree*, 531 U.S. at 91-92. The Supreme Court's decision affirming an order compelling arbitration in *Green Tree* was based, in part, on the fact that the claimant failed to meet her burden of showing the likelihood that she had to bear prohibitive costs. 531 U.S. at 91-92. In light of that factor, the Third Circuit in *Blair* concluded:

> Without some discovery, albeit limited to the narrow issue of the estimated costs of arbitration and the claimant's ability to pay, it is not clear how a claimant could present information on the costs of arbitration as required by *Green Tree* and how the defendant could meet its burden

to rebut the claimant's allegation that she cannot afford to share the cost. 283 F.3d at 609. Furthermore, as the district court noted in *Livingston*, "it seems axiomatic that, if the Supreme Court places a burden of proof [to show an arbitration agreement is invalid] on a party, then that party must be given an opportunity to pursue discovery related to the issue that it has the burden to prove." 2001 WL 709465, at *2.

### B. Plaintiff Seeks Discovery Related to the Fraudulent Formation of the Agreement to Arbitrate and Whether the Agreement Itself is Unconscionable

Plaintiff seeks discovery on what steps Defendants took to provide consumers with reasonable notice of the arbitration clause. The discovery is aimed to learn whether or not the marketing and website design of FreeScore.com was intended to create the impression that Plaintiff and other consumers were receiving a "free" report of their credit score. Additionally, Plaintiff seeks to learn whether other individuals were similarly confused by FreeScore and were unaware that they entered into an agreement to arbitrate. The relevant question is whether objectively reasonable consumers are going to be misled. Accordingly, Plaintiff's discovery seeks to learn how more about FreeScore's fraudulent inducement.

In addition to discovery relating to Defendants' fraudulent inducement, Plaintiff also seeks discovery on unconscionability of Defendants' arbitration clause. Section 2, the "'primary substantive provision of the [Federal Arbitration] Act'" (*Concepcion*, 131 S. Ct. at 1745 (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), still includes the valid savings clause, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The *Concepcion* majority characterized the rule as such:

> This saving clause permits agreements to arbitrate to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability," but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at

-15-
Plaintiff's Opposition to Defendants' Motion to Compel Arbitration

issue. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996); *see also Perry v. Thomas*, 482 U.S. 483, 492–493, n. 9, 107 S. Ct. 2520, 96 L .Ed. 2d 426 (1987). *Concepcion*, 131 S. Ct. at 1746-47. Applying this rule, the Supreme Court struck down California's *Discover Bank* rule, which classified most class arbitration waivers in consumer contracts as unconscionable. *Id.* at 1750. However, the Court made no holding on the application of other grounds for finding unconscionability as exist under state law. Here, Plaintiff's discovery seeks to identify simple information necessary to determine whether the arbitration agreement was created by FreeScore's deceptive advertising and is unconscionable.[2]

## VI. CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Compel Arbitration, or, in the alternative, defer ruling until Plaintiff has the opportunity to complete her arbitration discovery and submit further briefing.

Respectfully Submitted,

Dated: July 11 , 2011        STRANGE & CARPENTER

By: __/s/_____
  Brian R. Strange
  Gretchen Carpenter
  John P. Kristensen
  Attorneys for Plaintiff

---

[2] *Concepcion* is also distinguishable on the facts because the claim at issue in *Concepcion* "was *most unlikely* to go unresolved" because AT&T's arbitration provision provided it would "pay claimants a minimum of $7,500 and twice their attorney's fees if they obtain an arbitration award greater than AT&T's last settlement offer." 131 S. Ct. at 1753 (emphasis added). In contrast here, the arbitration clause does *not* guarantee *any* minimums or attorneys' fees to Plaintiff and, instead, merely indicates Defendants will reimburse Plaintiff's fees paid to the AAA if Plaintiff prevails. (Arbitration Motion, Delamere Decl., Ex. A1 ¶ 13, Dkt. No. 23-1).

-16-