O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA RAMIREZ, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FREESCORE, LLC; VERTRUE, INC.; VERTRUE, LLC; ADAPTIVE MARKETING LLC; IDAPTIVE MARKETING LLC; VELO HOLDINGS INC.; and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. 8:11-cv-0720-JST (MLGx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAYING MATTER PENDING ARBITRATION** |

Before the Court is a Motion to Compel Arbitration and Stay Case filed by Defendants Adaptive Marketing LLC, Freescore LLC, Idaptive Marketing LLC, Velo Holdings Inc., Vertrue Inc., and Vertrue LLC (collectively "Defendants"). (Doc. 21) For the reasons set forth below, the Court GRANTS Defendants' Motion and STAYS the matter pending arbitration.

## I.     BACKGROUND

Defendants removed Plaintiff Diana Ramirez's Complaint to federal court on May 11, 2011. (Doc. 1.) On May 25, 2011, Plaintiff filed her First Amended Complaint ("FAC"), alleging violations of: (1) the Connecticut Unfair Trade Practices Act, C.G.S.A. §§ 42-110A, *et seq.*; (2) the Connecticut Unfair Sales Practices Act, C.G.S.A. § 42-115P; (3) the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; (4) the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and (5) the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* (FAC, Doc. 17.) Plaintiff alleges that Defendants "falsely advertise[d] that they provide a 'free' service in FreeScore.com." (*Id.* ¶ 2.) "Defendants' scheme consists of heavily marketing that they offer 'FREE' credit scores. They induce consumers to 'join' FreeScore.com by simply clicking 'See Your Scores Now!' In reality, after only a few days, consumers will automatically be enrolled in a 'credit monitoring' service that charges their credit cards $19.95 monthly." (*Id.* ¶ 3.)

On June 10, 2011, Defendants filed this Motion to Compel Arbitration and Stay Case, arguing that, in signing up for their services, Plaintiff signed an agreement that contained a broad arbitration clause encompassing the claims at issue in this case. Plaintiff opposes the Motion, arguing that the agreement in which the arbitration clause is found is not valid because Plaintiff was fraudulently induced into signing the agreement. (Opp'n at 8.) Plaintiff argues that, because she "did not give her assent to the terms of the offer, there can be no valid arbitration clause."

## II. LEGAL STANDARD

The Federal Arbitration Act provides that an agreement to submit commercial disputes to arbitration shall be "valid, irrevocable, and enforceable." 9 U.S.C. § 2. When a motion to compel arbitration is filed, "[t]he burden is on the party opposing arbitration." *Shearson/Am. Express., Inc. v. McMahon*, 482 U.S. 220, 227 (1987). "The court's role under the Act is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

In these analyses, a court cannot consider the validity of the agreement as a whole. *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 471 (9th Cir. 1991). Rather, "it should . . . consider[] only the validity and scope of the arbitration clause itself." *Id.* A court may look to the record in order to determine the parties' intent to be bound. *Id.* This includes the pleadings on the motion to compel. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010). A court may also consider evidence outside of the pleadings, such as declarations and other documents filed with the court, using "a standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56]." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d. 796, 804 (N.D. Cal 2004)). *See also Hadlock v. Norwegian Cruise Line Ltd.*, No. 10-0187-AG (ANx), 2010 WL 1641275, at *1 (C.D. Cal. April 19, 2010); *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1104 n.1 (9th Cir. 2010) ("We take . . . facts from the First Amended Complaint, on file in the district court, and declarations filed in support of and in opposition to the motion to dismiss. All are part of our record.").

### III. DISCUSSION

**A. Choice of Law**

"Federal courts sitting in diversity look to the law of the forum state when making choice of law determinations." *Hoffman v. Citibank (S.D.), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008) (per curiam). "When an agreement contains a choice of law provision, California courts apply the parties' choice of law unless the analytical approach articulated in § 187(2) of the Restatement (Second) of Conflict of Laws . . . dictates a different result." *Id.*

> Under that approach, the court must first determine: "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue . . . .' (Rest., § 187, subd. (2).) If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will

|    |    |
|----|----|
| 1  | decline to enforce a law contrary to this state's fundamental |
| 2  | policy." |
| 3  | |
| 4  | *Washington Mutual Bank, FA v. Superior Court*, 15 P.3d 1071, 1078 (Cal. 2001) (quoting |
| 5  | *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1152 (Cal. 1992)).  Here, |
| 6  | Defendants argue, and Plaintiff appears to concede, that the dispute regarding the validity |
| 7  | of the arbitration provision should be governed by the laws of the State of Connecticut. |
| 8  | (*See* FAC ¶¶ 16, 30; Mot. at 6-7; Opp'n at 8.)  Therefore, the Court must determine if the |
| 9  | analytical approach from section 187(2), set forth above, "dictates a different result."  *See* |
| 10 | *Hoffman*, 546 F.3d at 1082. |
| 11 | First, Plaintiff alleges that Defendants FreeScore, LLC; Vertrue, Inc.; and Adaptive |
| 12 | Marketing LLC are all headquartered in Connecticut.  (FAC ¶¶ 6,7, 9.)  The Court |
| 13 | concludes that this provides a sufficient basis to show that Connecticut has a substantial |
| 14 | relationship to the parties.  *See Nedlloyd Lines*, 834 P.2d at 1153. |
| 15 | Second, the Court examines whether Connecticut's law regarding the validity of an |
| 16 | arbitration clause, in other words regarding contract formation, is contrary to a |
| 17 | fundamental policy of California.  *See Wash. Mut. Bank*, 15 P.3d at 1078; *see also First* |
| 18 | *Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether |
| 19 | the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . |
| 20 | should apply ordinary state-law principles that govern the formation of contracts.").  In |
| 21 | Connecticut, "the arbitrability of a dispute is a legal question for the court unless the |
| 22 | parties have clearly agreed to submit that question to arbitration."  *Bd. of Ed. v. Frey*, 392 |
| 23 | A.2d 466, 467 (Conn. 1978).  "The intention to have arbitrability determined by an |
| 24 | arbitrator can be manifested by an express provision or through the use of broad terms to |
| 25 | describe the scope of arbitration, such as 'all questions in dispute and all claims arising out |
| 26 | of' the contract or 'any dispute that cannot be adjudicated.'"  *Id.*; *see also White v.* |
| 27 | *Kampner*, 641 A.2d 1381, 1384 (Conn. 1994).  California law similarly states that "[w]hen |
| 28 | |

a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ." Cal. Civ. Code § 1639; *see also Berman v. Dean Witter & Co.*, 119 Cal. Rptr. 130, 134 (Cal. Ct. App. 1975).

Because the parties agree that the dispute regarding the validity of the arbitration provision should be governed by the laws of the State of Connecticut, and because the analytical approach articulated in § 187(2) of the Restatement (Second) of Conflict of Laws does not dictate a different result, the Court will use Connecticut law to decide the substantive issues in this case.

### B. Validity of Arbitration Clause

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). But "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).

In Connecticut, unless arbitration is mandated by statute, "arbitration is a creature of contract." *White*, 641 A.2d at 1384. Connecticut "favor[s] arbitration as a means of settling private disputes," *id.* (quoting *Garrity v. McCaskey*, 612 A.2d 742, 745 (1992)), however, "a person can be compelled to arbitrate a dispute only if, to the extent that, and in the manner in which, he has agreed so to do." *Id.* (quoting *Marsala v. Valve Corp. of America*, 254 A.2d 469, 470 (1969). As noted above, under Connecticut law, "[t]he intention to have arbitrability determined by an arbitrator can be manifested by an express provision or through the use of broad terms to describe the scope of arbitration, such as 'all questions in dispute and all claims arising out of' the contract or 'any dispute that cannot be adjudicated.'" *Frey*, 392 A.2d at 467.

Here, the contract in question, i.e. the "Membership Agreement" states:

13. **Arbitration**.  PLEASE READ THIS PROVISION CAREFULLY.  IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION.  ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO BRING OR PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.  IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY.  THE ARBITRATOR'S DECISION WILL GENERALLY BE FINAL AND BINDING.  ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.

Any claim, dispute or controversy between You and Us (or made by or against anyone connected with You or Us, or claiming through You or Us) arising from or relating to Your membership ("Claim"), including Claims regarding applicability or validity of this arbitration provision, shall be resolved by binding arbitration in accordance with the rules of the American Arbitration Association ("AAA") (except for any AAA rules providing for class claims or class arbitration) then in effect, subject to this Membership Agreement.

Any Claim regarding the validity or enforceability of this arbitration provision shall be governed by the laws of the State of Connecticut, without giving effect to the choice of law

provisions thereof.  This arbitration provision is made pursuant to a transaction involving interstate commerce and, in all other respects, including the determination of any questions about whether Claims are within the scope of this arbitration provision and therefore subject to arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1-16 ("FAA"), and shall be resolved by interpreting the arbitration provision in the broadest way the law will allow it to be construed.

All Claims are subject to arbitration, no matter what theory they are based on or what remedy they seek.  This includes Claims based on contract, tort (including intentional tort), fraud, agency, negligence, statutory or regulatory provisions, or any other source of law.  Claims made and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis.  As an exception to arbitration, You and We retain the right to pursue in a small claims court located in the federal judicial district that includes Your billing address at the time of the Claim, any Claim that is within the court's jurisdiction and proceeds on an individual basis.

. . .

IF YOU DO NOT CHOOSE TO ACCEPT THIS BINDING ARBITRATION PROVISION, YOU MUST NOTIFY US IN WRITING BY REGISTERED MAIL AT ARBITRATION OPT -OUT, 9500 WEST DODGE ROAD, SUITE 100,

> OMAHA, NE 68114-3331.  WITHIN TWENTY (20) DAYS AFTER RECEIPT OF THIS "TERMS OF MEMBERSHIP AND MEMBERSHIP AGREEMENT."  IF YOU SO NOTIFY US BY THAT TIME THAT YOU DO NOT ACCEPT THE BINDING ARBITATION PROVISION, YOU MAY CONTINUE TO BE A MEMBER FOR THE CURRENT MEMBERSHIP TERM UNLESS THE MEMBERSHIP IS OTHERWISE TERMINATED HEREUNDER.  HOWEVER, IN THE EVENT YOUR MEMBERSHIP IS CONTINUED, WE SHALL HAVE THE RIGHT NOT TO RENEW YOUR MEMBERSHIP AT THE END OF THE MEMBERSHIP TERM (OR TWELFTH MONTH ANNIVERSARY DATE FOR MEMBERSHIPS UNDER THE MONTHLY PAYMENT PLAN).

(Doc. 23, Ex. A1.)  Although the FAA presumes that the Court is to decide the issue of arbitrability, the Court should refer this issue to an arbitrator where there is "clear and unmistakable evidence" from the arbitration agreement, as construed by the relevant state law, that the parties intended the question of arbitrability to be decided by an arbitrator. *First Options*, 514 U.S. at 944.  Having reviewed the contract language above, the Court finds that the parties manifested an intent to have the question of arbitrability determined by the arbitrator. *See White*, 641 A.2d at 1384.

Plaintiff appears to argue that (1) the contract is unenforceable, and (2) that the arbitration clause (including the section delegating the issue of arbitrability to be decided by an arbitrator) is unenforceable, because the terms of the contract (including the arbitration clause itself) were not "reasonably conspicuous such that a reasonably prudent

offeree would notice them." (Opp'n at 11-12, Doc. 27.)  In *Buckeye Check Cashing, Inc. v. Cardegna*, however, the Supreme Court stated:

> First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.  Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.  Third, this arbitration law applies in state as well as federal courts.

546 U.S. 440, 445-46 (2006); *see also C.R. Klewin Ne., LLC v. City of Bridgeport*, 919 A.2d 1002, 1016-17 (Conn. 2007) (additionally adopting the Supreme Court's holding in *Buckeye Check Cashing* as a matter of state arbitration law).  Thus, under *Buckeye Check Cashing*, Plaintiff's first argument challenging the enforceability of the contract itself must be resolved by an arbitrator.

With regard to Plaintiff's second argument challenging the validity of the arbitration clause and its delegation of issues of arbitrability to be decided by an arbitrator, the Court examines the facts as set forth by the parties.  First, the Court notes that Plaintiff has failed to set forth any Connecticut law that stands for the proposition that contract terms that are not "reasonably conspicuous" are unenforceable.  Second, even if this was an accurate representation of the state of the law, having reviewed the print-outs of the website submitted by both parties, the Court finds that the arbitration clause was reasonably conspicuous.  The fact that the word "Free" appears numerous times on Defendant's webpage does not dissuade the Court from this finding.

Indeed, in order to sign up for Defendant's services, Plaintiff needed to type her email address below a paragraph that stated the following:

10

> Typing my e-mail address below will constitute my electronic signature and is my written authorization to charge/debit my account according to the Offer Details on the previous page. I will be notified in advance if the membership fee changes. By clicking "View Scores", I have read and agree to the <u>Offer Details</u> on the previous page and the <u>Privacy Policy</u> and the <u>Terms and Conditions</u> for *FreeScore*."

(Doc. 23-2, Ex. C2.) Plaintiff needed only to click on the link "Terms and Conditions," which would have brought her to the page that included the arbitration clause quoted earlier in this Order. The fact that Plaintiff might have typed her email address without reading the Terms and Conditions does not vitiate the arbitration clause.

> The general rule is that where a person of mature years, and who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it, and notice of its contents will be imputed to him if he negligently fails to do so; but this rule is subject to qualifications, including intervention of fraud or artifice, or mistake not due to negligence, and applies only if nothing has been said or done to mislead the person sought to be charged or to put a man of reasonable business prudence off his guard in the matter.

*Ursini v. Goldman* 173 A. 789, 792 (Conn. 1934). Plaintiff has set forth no facts that suggest "fraud or artifice, or mistake not due to negligence" nor does the Court find that Defendant's use of the word "Free" to be so misleading that "a man of reasonable business

11

1 prudence" would be "off his guard in the matter." *See id.* Therefore, the Court concludes
2 that Plaintiff has failed to show that the arbitration clause or the delegation of arbitrability
3 to an arbitrator is unenforceable.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion and STAYS the matter pending arbitration.

DATED: August 30, 2011

**JOSEPHINE STATON TUCKER**
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE